■ WORLDNET REAL ESTATE, INC., Doing Business as WHITNEY REALTY, Appellant, v PAUL SUCHOW et al., Respondents. [798 NYS2d 177]—

Cardona, P.J. Appeal from an order of the Supreme Court (Williams, J.), entered September 27, 2004 in Saratoga County, which denied plaintiff's motion for summary judgment.

On May 28, 2000, the parties entered into a one-year listing agreement whereby plaintiff was granted the "sole and exclusive right to sell" defendants' residence in Greenfield Center, Saratoga County. Plaintiff made a specific undertaking in the contract "to find a purchaser" who was "ready, willing and able." It further stated that plaintiff would be entitled to a 7% commission for any sale effected during the contract period or extension thereof, including if defendants sold the property themselves. The agreement also contained a clause allowing defendants to terminate or revoke the contract at any time, however, if defendants did so, plaintiff retained its "contract rights, which *may* include but are not limited to recovery of its commission" (emphasis added).

Following the execution of the contract, a prospective buyer, Joy Lucas, asserted that she learned of the availability of defendants' home from a coworker and contacted plaintiff's president, Laurence Whitney, to arrange a viewing in the summer of 2000. At the scheduled meeting, Whitney did not personally show the property; rather, his wife, who was not a licensed broker and could not answer any of Lucas's questions, showed the property in Whitney's place. Lucas then scheduled another meeting with Whitney a few days later. Whitney attended the meeting, but was reportedly only able to answer a few questions. A month or so thereafter, Whitney, Lucas and Lucas's fiancé visited the property, at which time Lucas again posed questions, such as the location of the property's boundaries and the amount of acreage. According to Lucas, Whitney was again unable to answer her questions and she expressed her disappointment with how the meetings had gone. Whitney reportedly responded with a comment that Lucas considered to be disparaging, and then he allegedly wished her "good luck" in buying the property since defendants were difficult sellers. Whitney further indicated to Lucas that she should contact defendants directly if she wanted more information about the property. Lucas had no

further contact with Whitney, and there is no evidence that any offer was made by Lucas at that time. According to defendants, Whitney never apprised them of Lucas's interest in the property.

Lucas testified that, thereafter, in approximately October 2000, she independently obtained defendants' telephone number and contacted them to "inform them that [she] had had a very negative experience" with Whitney. She also informed defendants that, although she "was still interested in the property, [she was] not [going to] pursue purchasing the property [if she had to continue to work with Whitney]." Lucas prepared a letter summarizing what had occurred with Whitney and submitted it to defendants. In November 2000, defendants terminated the listing agreement with plaintiff "for cause." In December 2000, defendants sold the property to Lucas and her fiancé for the asking price originally listed under the agreement with plaintiff. In May 2001, plaintiff commenced this action, demanding payment of its commission for the sale of the property. Following joinder of issue, plaintiff moved for summary judgment. Supreme Court denied the motion, prompting this appeal.

"[A] real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the principal" (*Dubbs v Stribling & Assoc.*, 96 NY2d 337, 340 [2001]). While plaintiff herein seeks its commission based on the precise terms of the listing agreement terminated by defendants, the use of the word "may" in the termination clause indicates that entitlement to a commission is not automatic where an agreement is terminated. Defendants' proof raises issues as to whether the parties' contemplated payment of a commission to plaintiff in the event that the agreement was legitimately terminated for cause. Furthermore, accepting defendants' allegations in the light most favorable to them for purposes of this motion (*see Reiser, Inc. v Roberts Real Estate*, 292 AD2d 726, 729 [2002]), questions of material fact clearly exist as to whether plaintiff fulfilled its obligation to find a purchaser and "showed" the property as contemplated by the listing agreement. Questions were also raised as to whether, among other things, Whitney, by his actions, "abandoned any plans he may have had to effect a sale" with respect to these buyers (*Gabrielli v Cornazzani*, 135 AD2d 340, 343 [1988]; *see generally Greene v Hellman*, 51 NY2d 197, 206 [1980]; *Hagedorn v Elwyn*, 229 AD2d 654, 656-657 [1996]). Accordingly, we cannot agree with plaintiff's contention that it established, as a matter of law, that it demonstrated its right to a commission following the termination of the contract or that it truly acted in defendants' best interests (*see Dubbs v Stribling & Assoc., supra* at 340).

We have reviewed the remaining arguments advanced by plaintiff and find them unpersuasive.

Mercure, Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.